# United States Court of Federal Claims

No. 17-1634 C
November 7, 2018

---

**ALPHONSO THOMAS,**

>*Plaintiff,*

**v.**

**UNITED STATES OF AMERICA,**

>*Defendant.*

---

>*Alphonso Thomas*, Atlanta, GA, *pro se.*

>*Jana Moses, Esquire,* United States Department of Justice, Civil Division, Washington, D.C., for defendant.

## ORDER AND OPINION

**Hodges,** Senior Judge.

Plaintiff Alphonso Thomas filed a complaint against the United States acting through the Benefit Guaranty Corporation. The complaint contains numerous allegations, including breach of contract, breach of implied duty of good faith and fair dealing, violation of the Fifth Amendment takings clause, violation of the Contracts Dispute Act, bad faith, and unfair competition.

Defendant timely filed a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1), or alternatively, for judgment on the pleadings under RCFC 12(c) or for summary judgment under RCFC 56. Plaintiff's complaint does not confer jurisdiction on this court to consider Mr. Thomas' claims. We must therefore grant defendant's motion to dismiss for lack of jurisdiction.

## BACKGROUND

The Benefit Guaranty Corporation, a corporation wholly owned by the United States, administers the "defined benefit pension plan termination insurance program" created by Title IV of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1301-

7017 1450 0000 1346 3219

1462 (2012). The Benefit Corporation guarantees benefits earned by participants in pension plans covered under Title IV. 29 U.S.C. § 1322. When a plan covered by Title IV terminates, the Benefit Corporation becomes the statutory trustee of the plan and pays benefits to a participant or their surviving beneficiaries. The statute also provides a "finder's fee" to a third-party that locates any unclaimed pension plan assets. The locator receives a small percentage of the pension plan assets when the Benefit Corporation secures the account.

In March 2017, Mr. Thomas contacted the Benefit Corporation claiming that he had located unclaimed pension plan assets. Nicole Hagan, counsel for the Benefit Corporation, sent a boilerplate "Letter of Engagement," or Agreement, to Mr. Thomas for him to fill out and return.

Mr. Thomas emailed Ms. Hagan a copy of the Agreement with his signature and twenty-seven electronic folders of information regarding unclaimed pension plan assets. However, he failed to complete spaces designated for the name of the pension plan and its value.[1] Ms. Hagan emailed Mr. Thomas on May 15, 2017, to explain that she "reviewed the Agreement that you returned last week and noted that the items highlighted in yellow need to be completed before we can sign it." She also asked, "[I]s there more than one plan involved in the recovery? If so, I need to amend the attached Agreement."[2]

Plaintiff filed a complaint in October 2017, alleging that the Benefit Corporation violated the Agreement. Mr. Thomas claims that he suffered damages because he "continue[d] to perform duties related to the anticipated agreement [by] identifying [assets] available to be recovered on behalf of [d]efendant," and the Benefit Corporation unjustly "gained unique proprietary knowledge of idea, search methods conveyed and used by plaintiff in locating abandoned or unclaimed assets, [and] valuable trade information . . . ."

Plaintiff requests the following relief: (1) actual damages of $300,000, incidental damages of $100,000, consequential damages of $30,000, and exemplary damages of $10,000,000; (2) "damages in an amount to be determined at trial for the alleged violations in an amount not less than $25,000,000"; (3) "[a] court order to compel a new revised

---

[1] Amendment D (Description of Funds to be Recovered) reads: "Claimant, the Pension Benefit Guaranty Corporation, engages Alphonso Thomas, Asset Recovery Group for the purposes of locating and recovering Lost Funds that belong to [Name of Pension Plan] and are valued at approximately [Value of Lost Funds] [$]."

[2] Plaintiff's Exhibit P-7 appears responsive to Ms. Hagan. However, the email is responding to another employee at the Benefit Corporation dated March 24, 2017, which is two-months-old. Plaintiff is obligated to refrain from conduct that frustrates the aim of the court; of "securing just, speedy, and inexpensive determination of every action and proceeding." RCFC 11 (Representations to the Court); RCFC 1 (Scope and Purpose).

contract at prevailing [Government Accountability Office] suggested fee scale," and (4) partial summary judgment as a matter of law.

Defendant contends that the court should dismiss plaintiff's complaint as "facially defective because it lacks well-pleaded factual allegations of the existence of a contract with the United States." We agree and dismiss plaintiff's claims.

## LEGAL STANDARDS

### A. Subject Matter Jurisdiction

As a threshold matter, the court must consider jurisdiction before reviewing the substantive merits of a case. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (explaining that "[w]hen a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or not presented.")

Our court has jurisdiction to hear claims against the United States founded either upon the Constitution, any Act of Congress, a regulation of an executive department, or an express or implied contract. 28 U.S.C. § 1491 (The Tucker Act). The Tucker Act is a jurisdictional statute that confers jurisdiction on this court, assuming a substantive right exists. *See United States v. Testan*, 424 U.S. 392, 398 (1976). The Tucker Act alone will not confer jurisdiction on the Court of Federal Claims. *See United States v. Mitchell*, 445 U.S. 535 (1980).

Any party and this court may challenge subject matter jurisdiction at any time. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). The burden of establishing jurisdiction "lies with the party seeking to invoke the court's jurisdiction." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

### B. Motion to Dismiss RCFC 12(b)(1)

If a motion to dismiss "challenges the court's subject matter jurisdiction based on the sufficiency of the pleading's allegations . . . those allegations are taken as true and construed in a light most favorable to the complainant." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993).

"If the RCFC 12(b)(1) motion denies or controverts the pleader's allegations of jurisdiction, however, the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Id.* As such, the court may "inquire into jurisdictional facts" beyond the pleadings to determine if jurisdiction exists. *Roccovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991).

A well-pleaded, non-frivolous allegation of an express contract, or an implied-in-fact contract generally overcome a challenge of jurisdiction pursuant to RCFC 12(b)(1). *Bank of Guam v. United States*, 578 F.3d 1318, 1325 (Fed. Cir. 2009). Conversely, claims based on frivolous allegations regarding the existence of a contract are subject to dismissal. *Central Freight Lines v. United States*, 87 Fed. Cl. 104, 108 (2009).

## C. Pro Se Litigants

*Pro se* plaintiffs' pleadings, "however inartfully pleaded," are held to a less stringent standard than those represented by counsel. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A court should be "receptive to *pro se* plaintiffs and assist them." *Demes v. United States*, 52 Fed. Cl. 365, 369 (2002). Nevertheless, a *pro se* plaintiff is not excused from the burden of proof to establish jurisdiction by a preponderance of the evidence. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). The complaint must allege "competent proof" of jurisdiction and cannot rely solely on conclusory allegations. *McNutt*, 298 U.S. at 189.

## D. Fifth Amendment Takings Clause

The Tucker Act "includes on its face all [Fifth Amendment] takings claims against the United States." *Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1362 (Fed. Cir. 2005). The court employs a two-part test to evaluate a takings clause claim: (1) "whether the claimant has identified a cognizable Fifth Amendment property interest that is asserted to be the subject of the taking," and (2) "if so, whether that property interest was 'taken.'" *Acceptance Insurance Co., Inc. v. United States*, 583 F.3d 849, 854 (Fed. Cir. 2009).

## E. Contract Disputes Act

The Contract Disputes Act governs claims against the United States involving federal government contracts. 41 U.S.C. §§ 7101-7109 (2012). The Act applies to "any express or implied contract [] made by an executive agency for . . . the procurement of services." 41 U.S.C. § 7102. The Federal Circuit has explained that "Congress's decision to limit the applicability of the [Act's] procedures to those claims 'relating to' a contract indicates that the claim at issue must have some relationship to the terms or performance of a government contract." *Applied Cos. v. United States*, 144 F.3d 1470, 1478 (Fed. Cir. 1998).

## DISCUSSION

## I. Breach of Contract

Generally, the Government "consents to be sued only by those with whom it has privity of contract." *Erickson Air Crain Co. of Wash. v. United States*, 731 F.2d 810, 813

(Fed. Cir. 1984). "The effect of finding privity of contract between a party and the United States is to find waiver of sovereign immunity." *Cienega Gardens v. United States*, 194 F.3d 1231, 1239 (Fed. Cir. 1998).

Express contracts and implied contracts consist of four elements: "(1) mutuality of intent to contract, (2) consideration, (3) a lack of ambiguity in offer and acceptance, and (4) authority on the part of the government agent entering the contract." *Seuss v. United States*, 535 F.3d 1348, 1359 (Fed. Cir. 2008).

### A. Express Contract

Defendant asserts that the complaint must be dismissed because plaintiff fails to show an express contract between Mr. Thomas and the Benefit Corporation. *See Ridge Runners v. United States*, 257 F.3d 1058, 1062 (Fed. Cir. 2002) (affirming dismissal for lack of subject matter jurisdiction because the alleged contract did not exist). We agree with defendant.

Defendant claims that the Agreement requires a signature from Judith R. Starr. We observe that the Agreement that is attached to the complaint is unsigned altogether. Mr. Thomas concedes this point: "as of [October 2017, defendant] has failed to render a contract and has thus failed to perform."

No other evidence establishes the existence of contract with the Benefit Corporation according to the four elements described above. *See Cain v. United States*, 350 F.3d 1309, 1316 (Fed. Cir. 2003) (affirming the dismissal of a shareholder's complaint because the record contained no evidence of a contract between plaintiff and the Government).

However, a court may still determine that the parties formed an implied contract. *See Bank of Guam*, 578 F.3d at 1329 (citing *Schism v. United States*, 316 F.3d 1259, 1278 (Fed. Cir. 2002) (explaining that an implied contract may be found only in the absence of an express contract, except when it is entirely unrelated to the express contract).

### B. Implied Contract

Mr. Thomas seems to claim that an implied contract formed with and after he sent the Government electronic files containing information regarding unclaimed pension plans. Mr. Thomas contends that the emails exchanged with Ms. Hagan constitute an "intent to restate or modify the Agreement. This suggests that plaintiff considered the contract to be complete upon its receipt by the Benefit Corporation even though he had not completed the form.

An implied-in-fact contract is "an agreement . . . founded upon meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct

of the parties showing, in light of the surrounding circumstances, their tacit understanding." *Baltimore & O.R. Co. v. United States*, 261 U.S. 592, 597 (1923). "[T]he scope of the Tucker Act's waiver of sovereign immunity 'extends only to contracts either express or implied-in-fact, and not to claims on contracts of law.'" *Lumbermens Mut. Cas. Co. v. United States*, 654 F.3d 1305, 1316 (Fed. Cir. 2011) (citing *Hercules Inc. v. United States*, 516 U.S. 417, 423 (1996).

Plaintiff's assertion that intent created an implied-in-fact contract is mistaken. Ms. Hagan could not bind the United States to the Agreement without Ms. Starr delegating that authority to her. *See Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947) ("The appearance of authority is not dispositive. An official must have actual delegated authority to enter into or amend an agreement."). Plaintiff offers no evidence to show that such a transfer occurred. Mr. Thomas' communications with the Benefit Corporation cannot support an implied-in-fact contract. *Town of Floyd v. United States*, 34 Fed. Cl. 170, 172 (1995) (noting that "[e]xtensive negotiations in which the parties demonstrate hope and intent to reach an agreement are not sufficient in themselves to establish a contract implied-in-fact.")

Mr. Thomas claims that the Benefit Corporation received the benefit of "hundreds of hours" of his labor and that it gained his "proprietary information." However, "the mere conferring of a benefit on the [G]overnment does not create an implied-in-fact contractual relationship. Implied-fact-contracts require conduct of the parties manifesting assent." *Heydt v. United States*, 38 Fed. Cl. 286, 302 (1997). We do not have jurisdiction to hear plaintiff's implied-in-fact contract claim.

### C. Breach of Implied Duty of Good Faith and Fair Dealing

"The implied duty of good faith and fair dealing cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions," *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 831 (Fed. Cir. 2010). Breach of an express contractual duty is not necessarily a precondition to a finding of breach of the implied duty of good faith and fair dealing; a party need only show interference with its "reasonable expectations regarding the fruits of the contract." *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005).

No evidence shows that the Benefit Corporation interfered with contract formation or with the contract itself. In fact, Ms. Hagan made clear that the Agreement had to be amended if plaintiff had more than one source of lost assets. She also stated that the contract "need[ed] to be completed before we can sign it." Plaintiff himself prevented a meeting of the minds by not completing the contract as Ms. Hagan directed.

## D. Remedies

Plaintiff proposes additional theories for the recovery of damages: reliance, unfair competition, unjust enrichment, and bad faith. Claims relying on equitable principles are "presumed based on an implied-in-law contract theory." *Barrett Refining Corp. v. United States*, 242 F.3d 1055, 1062 (Fed. Cir. 2001). Implied-in-law contracts do not normally fall under the jurisdiction of this court. *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1324-25 (Fed. Cir. 1997).

Plaintiff's request for a court order to compel a revised Agreement similarly fails to arise under our jurisdiction. *Beck v. Sec'y of Health and Human Servs.*, 924 F.2d 1029, 1035 (Fed. Cir. 1991) (explaining that this court "has no general equitable power to issue injunctions in cases other than those in which such power has explicitly been granted"); *see also Phang v. United States*, 87 Fed. Cl. 321, 326, n.10 (2009) ("[T]his court 'does not have jurisdiction to grant specific performance" in non-bid protest cases "unless it is tied and subordinate to a monetary award").[3]

## II. Fifth Amendment Takings Clause

Plaintiff asserts the Government violated the Fifth Amendment Takings Clause by obtaining "proprietary information" about the methods he used to locate pension plans.

This court does not have jurisdiction to adjudicate cases sounding in tort. See 28 U.S.C. § 1491(a). However, "where a tort claim stems from a breach of contract, the cause of action is ultimately one arising in contract, and thus is properly within the exclusive jurisdiction of [the court]." *Awad v. United States*, 301 F.3d 1367, 1372 (Fed. Cir. 2002); *see also Aldridge v. United States*, 67 Fed. Cl. 113, 121 (2005) ("If the tort claims in this case [] had arisen from a contract between plaintiff and the Government, [our court] would have jurisdiction based on the inherently contractual nature of the claims."). While misappropriation of trade secrets is tort that where a breach of confidence is 'reposed' in the defendant, e.g., through a contract," plaintiff has failed to show any contract exists between the parties. *Demodulation, Inc. v. United States*, 103 Fed. Cl. 794, 813 (2012).

## III. Contracts Dispute Act

Plaintiff asserts that the Benefit Corporation violated the Contract Disputes Act, 41 U.S.C. §§ 7101-7109 (2012).[4] The Act applies to "any express or implied contract [] made by an executive agency for . . . the procurement of services." 41 U.S.C. § 7102. Before this

---

[3] State courts and federal district courts jurisdiction extends to claims sounding in tort, equitable remedies, etc.

[4] Plaintiff cites 41 U.S.C. § 609, which was revised and codified by Congress as 41 U.S.C. §§ 7101-7109 (2012). Public Contracts Act, Pub. L. No. 111-350, § 3 (2011).

court can exercise jurisdiction, it must determine that two mandatory conditions are satisfied.

A contractor must first submit a "written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain." Then a contracting officer must issue a final decision as a "jurisdictional prerequisite." *Sharman Co, Inc. v. United States*, 2 F.3d 1564, 1568-69. We are not aware that a contracting officer exists in this case, but if one does exist, plaintiff has not submitted a final decision as required by Section 7103(a)(1) (2012).

## CONCLUSION

We have reviewed the complaint in a light most deferential to this plaintiff and taken into consideration the Judiciary's obligation to consider allegations of *pro se* pleadings with wide latitude. Nevertheless, plaintiff has not shown that any jurisdictional requirements for filing suit in this court are satisfied; nor have we been able to discern a claim within this court's jurisdiction.

For these reasons, we **GRANT** defendant's Motion to Dismiss. The Clerk of Court will **DISMISS** plaintiff's complaint for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). No costs.

**IT IS SO ORDERED.**

Robert H. Hodges, Jr.
Judge